**ALBERT PIPE SUPPLY CO., Inc.,**
**Appellant,**

**v.**

**SHARP BROS. CONTRACTING COM-**
**PANY, Respondent.**

**No. 24635.**

Kansas City Court of Appeals.

Missouri.

April 3, 1967.

Motion for Rehearing or Transfer to Su-
preme Court Denied June 5, 1967.

---◆---

Sherman L. Gibson, Rope, Shanberg,
Rope & Gibson, Kansas City, for appellant.

Thomas J. Leittem, John H. Altergott,
Jr., Shughart, Thomson & Kilroy, Kansas
City, for respondent.

MAUGHMER, Commissioner.

Plaintiff, Albert Pipe Supply Company,
Inc., is a New York Corporation. On Au-
gust 14, 1962, it filed suit in the Circuit
Court of Jackson County, Missouri against
the defendant, Sharp Bros. Contracting
Company, a Missouri corporation. The
suit was captioned "Petition on Account"
and prayed for judgment in the amount
of $6,388.03, with interest from April
4, 1961. At the time of trial, which be-
gan on June 8, 1966, the recovery amount
sought was reduced to $5,474. Trial to a
jury resulted in a verdict and judgment for
defendant. Plaintiff's motion for new trial
was overruled and it has appealed, assign-
ing as the sole ground of error that the trial
court erred in overruling its motion for di-
rected verdict at the close of all of the evi-
dence.

Plaintiff is a fabricator of alloys and
stainless steels. Defendant is a general con-
tracting company and in 1961, its principal
owners and operators were Ray *W*. Sharp,

father, and his son, Don E. Sharp, president. A second son and brother, Raymond *D.* Sharp, lived in New York City and headed a contracting company in that city, the corporate name of which was R. D. Sharp & Sons. This last mentioned corporation in March, 1961, entered into a contract with Hudson River Harbor Corporation, to build a marina (a place where boats, yachts and other craft may be docked) on the Hudson River in New York City. A part of the construction thereof required the fabrication of steel pipes and plates for use in making pontoons. For this particular fabrication job Raymond D. Sharp, the New York brother, got a firm bid or quotation from plaintiff and agreed to subcontract this work to plaintiff. It appears that Raymond's company was not very strong financially and had no approved credit rating in Dun and Bradstreet. Plaintiff was hesitant in extending credit to his company without further credit safeguards. The Kansas City company, defendant herein, with which Raymond of New York City had no business connection, carried an approved credit rating in Dun and Bradstreet. Raymond presented the problem to his father and brother in Kansas City. He first did this by long distance telephone and then personally a few days later, when he came to Kansas City for the purpose of attending a celebration honoring the 50th wedding anniversary of his parents. He brought with him the price quotations from plaintiff, the main items of which were $6.10 per foot on pipe and $9.50 on the plates. The Kansas City Sharps were unwilling to or at least did not advance any cash to him. The defendant company did, however, draw up and sign a written agreement captioned "Sub-contract". We set forth the first page thereof:

"Contract No. #1011    SUB CONTRACT

"This Contract between Sharp Bros. Contracting Company, a Corporation, called the General Contractor and ALBERT PIPE CO., 101–105 Varick Avenue, Brooklyn 37, N. Y. called the Sub-Contractor made this 24th day of March, 1961.

"Whereas, the General Contractor has been engaged to do the following work:

79th St. Marina Inc.
according to plans and specifications prepared by 79th St. Marina Inc. Architects and/or Engineers.

"Whereas the Sub-Contractor is willing and desires to undertake, to subcontract and be responsible for the following work: Furnish only 860' of 26" pipe $\frac{5}{16}$" wall casing, and $24\frac{3}{8}$" plates 27" in diameter, all according to plans, specifications and addendas on this project and at the following unit prices:

| | |
|---|---:|
| 860' of 26" diameter $\frac{5}{16}$" wall pipe @ $6.10 per ft. | $5,246.00 |
| 24 plates 27" diameter $\frac{3}{8}$" thick @ $9.50 per ft. | 228.00 |
| | $5,474.00 |

"Now, therefore in consideration of the payment by the General Contractor to the Sub-Contractor of the total sum of $ Five thousand four hundred seventy four & no/100 dollars ($5,474.00) Dollars including *all taxes, if any,* to be paid according to the specifications, the Sub-Contractor hereby contracts and agrees to do all things necessary to perform the work described above, in accordance with and subject to the aforesaid plans and specifications and requirements thereby imposed upon the General Contractor and the Sub-Contractor will hold the General Contractor harmless, in all ways as to the work covered by the undertaking. There shall be

*no additions or deletions to the above unless agreed to in writing.* The above contract is subject to conditions on the reverse side. (Italics supplied.)

SHARP BROS CONTRACTING COMPANY

By /s/   D. E. Sharp

Witness

ALBERT PIPE CO
   (Sub-Contractor)

By

   (Please sign original and return to us).

Witness".

Stamped thereon is the following:

"THIS SUB-CONTRACT MUST BE SIGNED AND RETURNED WITHIN 30 DAYS FROM DATE HEREON; OTHERWISE SUB-CONTRACT WILL BE NULL AND VOID.

SHARP B ROS. CONTRACTING CO."

It should be noted that this proposed agreement or subcontract was signed "Sharp Bros. Contracting Co. by D. E. Sharp" and a place was provided for the signature of plaintiff, Albert Pipe Company.

This subcontract agreement, signed by the president of the defendant company, was either mailed direct to plaintiff, or more likely under the evidence, was given to the New York brother Raymond who, in turn, delivered it to plaintiff. It appears that plaintiff company fabricated the materials and the marina was at least partially completed but Raymond Sharp's company was unable to or did not pay its liability under the marina contract. Plaintiff company attached an automobile and levied on some funds payable under the contract which still remained with the Hudson River Authority and thereby realized some payment on the account of Raymond's company. The facts recounted so far are not disputed. The evidence hereinafter described is disputed in whole or in part.

Plaintiff received a purchase order dated March 23, 1961, for this same material on a Sharp Industries, Inc. printed form and signed by one Charles A. Johnson. Sharp Industries, Inc. had been formed in the '50s to perform a government contract in Labrador. That job had been completed and the company had been closed out. All the testimony on the subject (from Raymond and Don Sharp) was that Johnson had no authority whatsoever to sign or issue any such purchase order.

Plaintiff's vice-president, Edward E. Selter, and its executive vice-president, Sidney G. Albert, each testified that they had telephone conversations with Don E. Sharp in which he verbally agreed to underwrite the activities of his brother Raymond in this whole matter. They contended there were six or seven such conversations. Don E. Sharp stated he never talked with Selter and only twice with Sidney G. Albert. In any event, it is agreed that plaintiff raised the prices for the plates from $9.50 to $13.50 per foot and in addition, included freight charges from Pittsburgh to New York and New York City sales tax, all of which raised the total bill from $5,474 (shown on the subcontract) to $6,388.03 and this was discussed in the telephone conversations. Mr. Don E. Sharp says his company never

did receive the signed subcontract from plaintiff although he said Mr. Albert, in the telephone conversations, assured him it had been signed and mailed. Both Mr. Albert and Mr. Selter asserted that the subcontract had been signed and sent, although that company's copy, which was received in evidence, does not contain notations that it had been signed or mailed and in addition, markings were placed thereon indicating the increased prices. Under date of April 26, 1961, defendant company, over the signature of D. E. Sharp, president, sent the following letter to plaintiff. Mr. Sharp said this letter was written in the belief and in reliance upon plaintiff's assurance that the subcontract had been signed and mailed to him.

"April 26, 1961
REGISTERED MAIL

"Albert Pipe Co.
101–105 Varick Avenue
Brooklyn 37, N. Y.

Re: Contract No. #1011 dated 3/24/61

"Gentlemen:
"With reference to your telephone call of April 24th, we are hereby notifying you that we have authorized no increase on the above reference contract price of $5,474.00, and therefore will not be responsible for any sums of money over and above the amount of $5,474 as set out in referenced contract.

Yours very truly,
SHARP BROS. CONTRACTING CO.

/s/ D. E. SHARP
D. E. Sharp

DES:pmb".

———◆———

Mr. Selter testified that the pipe had been delivered to the Raymond Sharp Company on the job in New York City by "April 17, 1961 or within a day or two of that date".

The jury was instructed to find for plaintiff if (1) "You believe that plaintiff mailed a signed, unaltered sub-contract form to defendant within thirty days of March 24, 1961" or (2) "If you believe that defendant's letter of April 26, 1961, acknowledged his liability as a guarantor". The converse of these instructions were also given. No complaint has been registered on appeal as to the instructions. Appellant's sole assignment of error is that the court erred in refusing its motion for directed verdict. It bases such conclusion upon two theories: First, "that defendant, by its letter of April 26, 1961, indicated that defendant considered itself irrevocably bound for the sum of $5,474.00". Second, "All the evidence showed that a guarantor relationship existed, that in reliance upon *said* (same) appellant extended credit and shipped the merchandise involved and that the liability of defendant under the contract of guaranty was proved as a matter of law".

Appellant cites authority for the proposition that a guarantor may waive his right to notice of acceptance of the guaranty. 38 C.J.S. Guaranty § 14; Texas Co. v. Stanberry, Mo.App., 165 S.W.2d 696, 700; Industrial Bank & Trust Co. v. Hesselberg, Mo., 195 S.W.2d 470, 473, 474. Such a principle is generally recognized. The waiver of notice may be expressly provided for as in the Hesselberg case, or it may be inferred from the guarantor's acts or declarations or from his acknowledgment of his liability. The Supreme Court (page 473)

in Hesselberg said this: "In an instance where there has been but an offer or proposal to guarantee the performance of an undertaking of another, there is no contract until the offer is accepted. This is the rule as to contracts generally". Examination of Texas Co. v. Stanberry, supra, cited by appellant, reveals that plaintiff's motion for directed verdict was denied, the jury verdict and judgment were for defendant and this court affirmed on appeal.

■ Appellant says the evidence all showed existence of a guarantor relationship. We believe defendant did by its signed subcontract offer to become the principal contractor for specified materials under a specific part of Raymond D. Sharp's contract, but for only the written proposed contract price of $5,474.00 and with certain restrictions or limitations specified in writing therein, namely, if the offer be accepted within thirty days, if the amount included all taxes and if there were "no additions or deletions" unless agreed to in writing. Plaintiff did attempt to increase the price provided, charge sales tax and add freight. There was a factual dispute under the evidence as to whether or not plaintiff signed and returned the subcontract. This fact issue was for determination of the jury. It was submitted to that body and the finding was against plaintiff's contention.

■ Did plaintiff extend the credit because of defendant's offer of the subcontract? We believe it did in the beginning, but plaintiff did not comply with or bring itself within the terms of defendant's written offer to guarantee a part of the marina contract (Subcontract dated March 24, 1961). Did the letter of April 26, 1961, acknowledge defendant's liability for $5,-474.00 in spite of plaintiff's noncompliance with the subcontract offer? Defendant's president testified that the letter was written under the assurance of plaintiff's vice-president, Mr. Albert, that the subcontract had been signed and mailed. The letter squarely denied liability for more than $5,-474.00 and specifically refused to accept responsibility for $6,383.03, which plaintiff was orally claiming by telephone and in writing by billing defendant for that amount. In fact, plaintiff continued until June 8, 1966 to assert defendant was liable for the full amount. The question as to whether or not this letter of April 26, 1961, under all the circumstances, acknowledged defendant's liability was resolved by the jury in favor of defendant.

Plaintiff invites our attention to Rich and Rubin v. Clayton Mark & Company, 8 Cir., 250 F.2d 622, and to N. O. Nelson Mfg. Co. v. Shreve, 94 Mo.App. 518, 68 S.W. 376. The facts in Clayton Mark, ruled sufficient to establish a guarantor status, are quite different from those in the case before us. Rich and Rubin, the guarantors, wrote the supplier a letter stating that they would provide "adequate financing", "in furtherance" of the guaranteed contract. They took an assignment from the supplier and set up a special bank account covering the whole matter. The suit was tried to the court with a finding for plaintiff and a holding that specific notice of acceptance under those circumstances was not necessary. In the Nelson case notice was not required where a father generally guaranteed his son's open account with a particular store.

We are unable to conclude that plaintiff was entitled to a directed verdict as a matter of law. Certainly it was not so entitled under the subcontract offer unless it was accepted unamended, signed and returned to defendant within the required thirty days. In its reply brief plaintiff argues strenuously that there is no evidence contradicting appellant's contention that the subcontract was signed and mailed to defendant. We disagree with this statement. Defendant's president said it was never received, plaintiff's written records nowhere indicated it had been mailed or signed, and admittedly plaintiff for at least five years, asserted that defendant owed not $5,474.00, the amount provided for in the subcontract, but $6,383.03. This disputed fact issue was properly submitted to the jury. It is fur-

ther our opinion that the letter of April 26, 1961, cannot be ruled to establish defendant's liability as guarantor, as a matter of law, for $5,474.00. It depends upon all these surrounding circumstances and we believe that these surrounding circumstances in the instant case made the issue one for the jury.

No other assignment of error having been made, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.